———————————————————————

CARLOS ABREU,

        Plaintiff,

v.

ERIC FARLEY, ET AL.,

        Defendants.

**DECISION AND ORDER**

6:11-CV-06251 EAW

———————————————————————

## **INTRODUCTION**

By Decision and Order filed on March 15, 2019 (the "March Decision") (Dkt. 121), this Court granted in part and denied in part Defendants' motion for partial summary judgment and held Defendants' motion to revoke Plaintiff's *in forma pauperis* ("IFP") status in abeyance pending the Second Circuit's decision in *Shepherd v. Annucci*, No. 17-2261 (2d Cir. July 21, 2017). On April 15, 2019, the Second Circuit issued its decision in *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019). Both sides have submitted additional briefing regarding *Shepherd*'s impact on the disposition of Defendants' revocation motion. (*See* Dkt. 125; Dkt. 129; *see also* Dkt. 131). For the reasons that follow, Defendants' motion to revoke Plaintiff's IFP status (Dkt. 59) is granted, and Plaintiff's IFP status is hereby revoked.

## **BACKGROUND**

The factual background and procedural history relevant to this motion are set forth in detail in the Court's March Decision, with which familiarity is assumed. (Dkt. 121).

The Court provides only a brief summary, as well as additional background information as relevant to this motion.

Plaintiff Carlos Abreu ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations arising out of his incarceration at the Five Points Correctional Facility ("Five Points"). (Dkt. 1). After this Court's initial screening of Plaintiff's first complaint, the Court granted Plaintiff leave to proceed IFP. (Dkt. 3). Soon thereafter, Plaintiff was appointed *pro bono* counsel to assist in the prosecution of this action. (*See* Dkt. 9). Plaintiff subsequently filed voluminous pleadings, alleging numerous grounds for which he believes he is entitled to relief against an array of individuals.

On March 15, 2019, this Court issued the March Decision, granting in part and denying in part Defendants' motion for partial summary judgment. (Dkt. 121). Plaintiff's § 1983 excessive use of force and related failure to intervene claims, Eighth Amendment conditions-of-confinement claims for unlawful prison cell illumination, and common law causes of action survived summary judgment as against a number of the named defendants as more specifically outlined in that decision.

The Court also held Defendants' motion to revoke Plaintiff's IFP status in abeyance pending the Second Circuit's decision in *Shepherd v. Annucci*, No. 17-2261 (2d Cir. July 21, 2017). In doing so, the Court identified numerous cases in which a court had "revoked the IFP status of a three-strikes litigant when the defendant challenges the court's preliminary finding that the litigant is entitled to the imminent danger exception, using evidence outside the four corners of the complaint to refute that preliminary finding." (Dkt. 121 at 9-10). Defendants contend that the same conclusion should be reached here. (*See,*

*e.g.*, Dkt. 59-2 at 5-6). However, because the *Shepherd* case was likely to address the law on this very issue, the Court declined to rule upon Defendants' revocation motion until the Second Circuit had issued its decision.

On April 15, 2019, the Second Circuit decided *Shepherd v. Annucci*, 921 F.3d 89 (2d Cir. 2019), holding that "courts may reexamine a provisional determination that a complainant is in 'imminent danger of serious physical injury' when, after being served with the complaint, a defendant challenges that determination." *Id.* at 95. The *Shepherd* court also confirmed that a court may conduct a "narrow evidentiary inquiry" when reexamining an imminent danger determination. *Id.* at 95-96.

This Court subsequently requested both sides to submit supplemental briefing as to what impact, if any, *Shepherd* had on the disposition of Defendants' pending revocation motion. (Dkt. 122). Both sides have since filed additional submissions. (Dkt. 125; Dkt. 129; *see* Dkt. 131[1]).

In the meantime, it came to the Court's attention that Plaintiff was released from state custody and deported. The Court conducted a status conference with counsel on October 2, 2019, and it was agreed that it would be beneficial to conduct a telephone call with Plaintiff to explore how he intended to continue to litigate this matter, now that he was barred from entry into this Country. (Dkt. 134). The Court arranged for such a conference to be held on October 25, 2019, and also arranged for an interpreter to be present at the Court's expense. However, Plaintiff did not appear telephonically for the conference

---

[1] Defendants filed a request to submit an attached reply brief (Dkt. 131), which the Court hereby grants.

and there was no answer at the telephone number that his counsel repeatedly dialed in an attempt to contact Plaintiff for the conference. (Dkt. 136). Because of the Court's decision concerning Plaintiff's IFP status, it does not, at this time, reach any conclusion on whether Plaintiff's deportation and failure to participate in a Court-scheduled status conference necessitates appropriate action, including dismissal of this action.

## DISCUSSION

### I. The Three Strikes Rule and Imminent Danger Exception

A party commencing a civil action in this Court ordinarily must pay a $350.00 filing fee, as well as a $50.00 administrative fee. *See* 28 U.S.C. § 1914. Of course, the Court may grant a party leave to proceed IFP if it determines that the party is unable to pay the filing fee. *See id.* at § 1915. Nonetheless, not all litigants may be granted leave to proceed IFP. As set forth in 28 U.S.C. § 1915(g), the "three strikes" provision prevents prisoners from proceeding IFP if they have brought three or more lawsuits that have been dismissed as frivolous or for failure to state a claim:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id.* at § 1915(g).

Thus, under that statute, a prisoner with three strikes may proceed IFP only if he can show that he is "under imminent danger of serious physical injury." *Id.* "An imminent danger is not one that has dissipated by the time a complaint is filed; rather it must be one

existing at the time the complaint is filed." *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010) (internal quotation marks and citation omitted).

The Second Circuit has instructed that, when determining whether a prisoner has shown an imminent danger, a court should "not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question." *Id.* (internal quotation marks omitted). That instruction suggests that a court should consider only the allegations in the complaint when considering whether the imminent danger exception applies, although the Second Circuit did not specifically limit the imminent danger review to the four corners of the complaint. *See id.*; *see also Abreu v. Lira*, No. 9:12-CV-1385 (NAM/DEP), 2014 WL 4966911, at *2 (N.D.N.Y. Sept. 30, 2014), *adopting report and recommendation*, No. 9:12-CV-1385 (NAM/DEP) (N.D.N.Y. Apr. 11, 2014).

The Second Circuit has since clarified that district courts "may reexamine a provisional determination that a complainant is in 'imminent danger of serious physical injury' when, after being served with the complaint, a defendant challenges that determination," and conduct a "narrow evidentiary inquiry" into the legitimacy of the plaintiff's fear of imminent danger. *Shepherd*, 921 F.3d at 94-95. The *Shepherd* court explained that to hold "otherwise would allow prisoner-litigants to continue proceeding IFP where an assertion of imminent danger is made—even if defendants had 'incontrovertible proof that rebutted those allegations.'" *Id.* at 95 (quoting *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010)); *accord Chavis*, 618 F.3d at 170 ("A court may find that a complaint does not satisfy the 'imminent danger' exception if the

complainant's claims of imminent danger are conclusory or ridiculous." (quotation and citation omitted)). Accordingly, the Second Circuit agreed with the numerous other courts that have revoked the IFP status of a three-strikes litigant when a defendant challenges the preliminary finding that the litigant is entitled to the imminent danger exception. *See Abreu v. Brown*, 317 F. Supp. 3d 702, 705 (W.D.N.Y. 2018) ("The Court agrees with those courts that it may look beyond the complaint when considering a defendant's challenge to the preliminary finding that a three-strikes litigant is entitled to the imminent danger exception."); *Tafari v. Baker*, No. 6:16-cv-06472(MAT), 2017 WL 1406274, at *2 (W.D.N.Y. Apr. 20, 2017) (collecting cases stating the same); *Bernier v. Koenigsmann*, No. 15-CV-209A, 2017 WL 603217, at *4 (W.D.N.Y. Feb. 15, 2017) ("Although courts assessing imminent danger should not make an overly detailed inquiry, they are allowed to look at information outside the four corners of a complaint."); *Green v. Venettozzi*, No. 14-CV-1215 (BKS/CFH), 2016 WL 6902545, at *3 (N.D.N.Y. Oct. 31, 2016) ("To refute a preliminary finding with facts that satisfy the imminent danger exception, the Court may look outside the four corners of the complaint."), *report and recommendation adopted*, 2016 WL 6902180 (N.D.N.Y. Nov. 23, 2016); *Abreu v. Lira*, 2014 WL 4966911, at *2 ("In reviewing the issues surrounding plaintiff's claim that at the time he filed the complaint, he was facing imminent danger of serious physical injury, the Court agrees . . . that it is appropriate for the Court to review evidence outside the allegations of the complaint upon defendants' challenge to plaintiff's IFP status."); *Jackson v. Jin*, No. 12-CV-6445-FPG, 2014 WL 1323211, at *1 (W.D.N.Y. Mar. 31, 2014) ("In determining whether the

imminent danger exception applies, the Court may consider more recent medical evidence.").

Plaintiff agrees that "the *Shepherd* decision confirmed that district courts may make a limited review of materials outside the complaint in determining whether to revoke IFP status." (Dkt. 129 at 4). However, Plaintiff emphasizes that this "inquiry must be narrow, as the three-strikes rule concerns only a threshold procedural question." (*Id.*); *see Shepherd*, 921 F.3d at 96 ("[A] narrow evidentiary challenge to a provisional determination that a prisoner is in imminent danger of serious physical injury should not metastasize into 'a full-scale merits review.'" (quoting *Taylor*, 623 F.3d at 486)). As such, Plaintiff contends that *Shepherd* is factually distinguishable because Plaintiff has alleged a "pattern of assault" and "threats of continuing violent assault." (Dkt. 129 at 8; *see id.* at 8-12).

By contrast, Defendants contend that *Shepherd* "explicitly found that it was not error to revoke an inmate's pauper status where his own medical records and the testimony of qualified medical staff rebutted his claims of imminent danger." (Dkt. 125 at 2). Defendants argue that Plaintiff's own medical records and the declarations of the Five Points medical personnel directly rebut Plaintiff's fear of imminent danger. (*Id.* at 2-4). Defendants also argue that several of the claims asserted by the *Shepherd* plaintiff are similar to Plaintiff's contentions here, further supporting revocation of Plaintiff's IFP status. (*See id.* at 3-4).

Having considered the parties' arguments, the Court now turns to conduct a "narrow" review of Defendants' proffered evidence—consisting of the declarations of Five

Points corrections and medical staff and Plaintiff's medical records—to determine whether the Court should revoke its preliminary finding that the imminent danger exception applies.

## II. Plaintiff is a "Three-Strikes Litigant" and the "Imminent Danger" Exception Does Not Apply

The Court previously determined that Plaintiff was a three-strikes litigant because at least four of Plaintiff's prior actions or appeals have been dismissed as frivolous or for failure to state a claim. Plaintiff's strikes include at least the following: (1) *Abreu v. Disability Advocates, Inc.*, No. 1:09-CV-06306-LAP (S.D.N.Y. July 15, 2009) (dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (2) *Abreu v. Disability Advocates, Inc.*, No. 09-CV-3268, Mandate (2d Cir. Oct. 30, 2009) (dismissing appeal because it lacked an arguable basis in law or fact); (3) *Abreu v. Supreme Court of Bronx Cty.*, No. 1:10-CV-01310-LAP, Judgment (S.D.N.Y. Feb. 18, 2010) (dismissing complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); and (4) *Abreu v. Supreme Court of Bronx Cty.*, No. 10-1130 (2d Cir. Aug. 11, 2010) (dismissing appeal because it lacked an arguable basis in law or fact).

However, Plaintiff argues that his IFP status should not be revoked pursuant to the three-strikes rule "because his situation fits within the exception built into the statute's bar for 'imminent danger of serious physical injury.'" (Dkt. 93 at 25). The imminent danger exception is intended "as an escape hatch for genuine emergencies only." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). "While the term 'serious physical injury' as utilized in section 1915(g) is not concretely defined, it has been construed by courts as encompassing a 'disease that could result in serious harm or even death[.]'" *Jackson*, 2014

WL 1323211, at *1 (quoting *Ibrahim v. District of Columbia*, 463 F.3d 3, 7 (D.C. Cir. 2006)). "The imminent danger an inmate faces, moreover, must be real, and not merely speculative or hypothetical." *Welch v. Charlan*, No. 9:06-CV-0061 (GTS/DEP), 2008 WL 5382353, at *7 (N.D.N.Y. Dec. 16, 2008). As noted above, "[t]o revisit a preliminary finding that a three-strikes plaintiff satisfies the imminent danger exception, the court may look outside the four corners of the complaint." *Tafari*, 2017 WL 1406274, at *2; *see Shepherd*, 921 F.3d at 94-95.

A plaintiff seeking to benefit from the imminent endangerment exception—which, as discussed above, is reserved "as an escape hatch for genuine emergencies only," *Lewis*, 279 F.3d at 531—has the burden of establishing that he is in imminent danger of serious physical injury to successfully oppose the revocation of his IFP status. *See Coffman v. Tsali*, No. 6:18CV186, 2018 WL 4502566, at *1 (E.D. Tex. Sept. 19, 2018) ("The burden is upon the plaintiff to show that he is in imminent danger of serious physical injury at the time of the filing of the complaint through specific facts rather than conclusory allegations."); *Davis v. County of Allegheny*, No. CV 18-450, 2018 WL 2122882, at *1 (W.D. Pa. Apr. 19, 2018) ("A plaintiff who has three strikes, bears the burden of showing that he is in 'imminent danger of serious physical injury.'"), *report and recommendation adopted*, 2018 WL 2121605 (W.D. Pa. May 8, 2018); *Taylor v. Watkins*, No. CIV.10-4-GPM, 2010 WL 1963128, at *2 (S.D. Ill. May 17, 2010) ("Defendants bear the burden of producing evidence to preclude a prisoner from filing *in forma pauperis*, and once that evidence is introduced, the burden shifts to the plaintiff to show that he is actually in imminent danger of serious physical harm. Defendants' burden is satisfied by the existence

of the three strikes against Plaintiff. Plaintiff now bears the burden of showing he is in imminent danger." (quoting *Brown v. City of Philadelphia*, Civil Actions Nos. 05-4160, 06-2496, 06-5408, 08-3369, 2009 WL 1011966, at *10 (E.D. Pa. Apr. 14, 2009))); *Crane v. Hatton*, No. C 06-06910 JF (PR), 2009 WL 3112077, at *2 (N.D. Cal. Sept. 23, 2009) ("Plaintiff has the burden of proving that he is in imminent danger of serious physical injury."); *accord Fuller v. Myers*, 123 F. App'x 365, 366 (10th Cir. 2005) ("To meet his burden under § 1915(g), the inmate must provide 'specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury.'" (quoting *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003))).

Plaintiff fails to meet his burden. In an attempt to satisfy the imminent danger exception, Plaintiff relies on the eleven physical assaults he allegedly endured while housed at Five Points. (*See* Dkt. 93 at 26). These alleged assaults occurred on March 30, 2010, May 10, 2010, May 29, 2010, September 10, 2010, November 21, 2010, December 18, 2010, February 21, 2011, March 21, 2011, September 27, 2011, December 5, 2011, and January 17, 2012. (*Id.*; *see* Dkt. 46 at ¶¶ 122-23, 151, 164, 174, 212, 246, 302, 333; Dkt. 93-5 at 16; Dkt. 93-9 at 2-4). Nevertheless, a review of Defendants' medical evidence undermines the plausibility of Plaintiff's allegations. *See Shepherd*, 921 F.3d at 96.

For example, on March 30, 2010, Plaintiff alleges that correctional officers Barry Countryman ("C.O. Countryman") and Jacob Smith ("C.O. Smith") "removed Plaintiff from the sick-call room, [and] used violent and excessive force in smashing Plaintiff into the floor face first," before continuing to "physically and verbally assault[] Plaintiff while

Plaintiff was on the floor." (Dkt. 46 at ¶ 123). Correctional officer Richard Cioffa ("C.O. Cioffa"), along with C.O. Countryman and C.O. Smith, "grabbed Plaintiff and violently pushed him into a wall" while they transferred Plaintiff to a prison cell. (*Id.*). The correctional officers also "tightened Plaintiff's handcuffs such that they cut Plaintiff's wrists." (*Id.*). Allegedly, correctional sergeants T. Barber ("Sgt. Barber") and Richard Goodliff ("Sgt. Goodliff") "were present," but they failed to intervene. (*Id.* at ¶ 122).

Plaintiff's allegations are contradicted by his medical records. A review of Plaintiff's medical progress note for March 30, 2010, indicates that he told medical staff that he had been subjected to excessive force and was experiencing pain in his arm, face, and wrist. (Dkt. 59-10 at 134). However, the medical evaluation notes reveal that Plaintiff exhibited "no visible injuries," no edema, and no redness upon examination. (*Id.*). Despite raising similar subjective complaints the following day, Plaintiff again exhibited no signs of swelling or deformity. (*Id.*).

Plaintiff further alleges that four correctional officers punched him and beat him with sticks on May 10, 2010 (Dkt. 46 at ¶ 151), but the medical progress note for May 11, 2010, indicates that Plaintiff had been previously observed "banging on [his] cell door" and "punching" himself (Dkt. 59-10 at 127). Plaintiff's medical examination revealed only a "slightly red area" on his chest and arm. (*Id.*). This *de minimis* injury recorded by medical personnel in no way reflects Plaintiff's assertion that four correctional officers punched him and beat him with sticks. Similarly, Plaintiff alleges that Sgt. Barber and nurse T. Carroll ("Nurse Carroll") "verbally harassed him, threatened him with physical assault, and physically assaulted him" while escorting him to the infirmary on May 29,

2010. (Dkt. 46 at ¶ 164). Again, the medical progress note for June 1, 2010, reveals no signs of injury. (Dkt. 59-10 at 121).

On September 10, 2010, unidentified correctional officers at the Downstate Correctional Facility ("Downstate") allegedly "used force to place [Plaintiff] on the bus" to transfer him back to Five Points, and then "Downstate staffs' reports covered up this incident." (Dkt. 46 at ¶ 174). Not only does Plaintiff fail to explain how any of the named defendants in this action were involved in this alleged assault, but the medical progress note dated September 10, 2010, reveals that Plaintiff "refused to be seen" by Five Points medical staff, and it does not otherwise indicate that he suffered any bodily harm. (Dkt. 59-10 at 115).

Next, Plaintiff alleges that on November 21, 2010, nurse Kimberly Cheasman ("Nurse Cheasman") came to his cell and hit his hands and fingers with a bucket. (Dkt. 46 at ¶ 212). However, the medical progress note dated November 22, 2010, reveals that Plaintiff could move his hands without difficulty. (Dkt. 59-10 at 110). Indeed, Plaintiff refused to unwrap his hands to display any injuries and became angry and verbally aggressive when asked to do so. (*Id.*). Plaintiff also alleges that Nurse Cheasman visited his cell again on December 18, 2010, in order to physically assault him. (*See* Dkt. 46 at ¶ 246). Plaintiff claims that she slammed the prison cell door hatch on his left arm when he attempted to obtain his medications, and then she threatened to kill him. (*Id.*). The medical progress note dated December 19, 2010, does not suggest that Plaintiff complained about any pain in his arm, and instead reveals that he complained only of ear pain and some throat soreness. (Dkt. 59-10 at 100).

Plaintiff alleges that similar incidents occurred on February 21, 2011, and March 21, 2011. On both occasions, nurse Annette Holm allegedly slammed the prison cell door's feeding hatch on Plaintiff's arm multiple times. (*See* Dkt. 46 at ¶¶ 302, 333). Although Plaintiff apparently raised some complaints of pain in his right arm, his medical examination conducted on February 23, 2011, revealed "no deformity," "no edema," and "no visible injury" to his arm. (Dkt. 59-10 at 96). Additionally, the medical progress note for March 21, 2011, did not indicate that Plaintiff complained of pain in his arm at all, and it revealed that he had recently "refused" his prescription and was "described as being physically active in a way which is inconsistent with being in significant pain." (*Id.* at 91).

Lastly, Plaintiff alleges that he was physically assaulted by C.O. Countryman, correctional sergeant Remy Babineaux, and correctional sergeant D. Gleason on September 27, 2011, December 5, 2011, and, with "other guards," on January 17, 2012. (Dkt. 93-9 at 1). Those "other guards" included Sgt. Goodliff, "Sgt Haff," Nurse Carroll, correctional officer VanHorn, "C.O. G. Hinman," "C.O. S. White," "C.O. M. Jenkins," "C.O. T. Casper," and "C.O. B. Schmitt." (*Id.* at 3). During the January encounter, Plaintiff alleges that the correctional officers beat him, tortured him, and raped him with a baton from 9:50 A.M. to 12:45 P.M. (*See id.* at 2-4). While a review of Plaintiff's medical records reveals the presence of superficial injuries, the resulting medical findings fail to demonstrate the presence of an imminent danger of serious physical injury.

For example, Plaintiff's September 27, 2011, medical progress note reveals that Plaintiff became argumentative and physically threatening while in the sick-call room and was then wrestled to the floor. (Dkt. 59-10 at 44). He did not appear to be in pain and

exhibited full active and passive movement in both shoulders, elbows, and wrists. (*Id.*). There appeared to be some red bruising on Plaintiff's shoulder and some soft tissue injuries to his wrists, but there was no deep tenderness noted in Plaintiff's shoulder or any deformity near his clavicle. (*Id.*).

The medical progress note recorded on December 6, 2011, discloses that a "red area" and "superficial abrasions" were observed on Plaintiff's chest and back. (*Id.* at 22). Although Plaintiff reported some tenderness to his chest, hips, shoulders, arms, wrists, and outer right thigh, no evidence of any other injury was observed. (*Id.*). Plaintiff also indicated that he was "vomiting blood" and that "blood [was] coming out [his] nose," but the medical staff observed "no blood" in Plaintiff's oral cavity. (*Id.* at 23). The following day, Plaintiff again complained of pain to his limbs, chest, and abdomen, but when he was offered medication, he "refused all meds" and was observed walking about without any apparent distress. (*Id.* at 22).

Finally, the medical progress note recorded for January 17, 2012, indicates that Plaintiff was discovered in his prison cell with a cloth around his neck and red marks on his neck. (*Id.* at 5). When Plaintiff's "cuffs were removed[,] he attacked" the prison staff. (*Id.*). Medical personnel observed "abrasions" on Plaintiff's face and ankle, two "red marks" on his abdomen, and a scratch to his left foot. (*Id.*). Although an x-ray was ordered, Plaintiff was initially "non-compliant." (*Id.*). Plaintiff was able to move his fingers despite complaints of pain, and there was no indication of any swelling in his fingers. (*Id.*). Plaintiff also complained of pain to his right wrist, and the area around that wrist appeared red and swollen—consistent with handcuff marks. (*Id.*). X-rays were eventually taken of

Plaintiff's face and revealed only superficial soft tissue swelling with no evidence of "intracranial hemorrhages or brain parenchymal contusion injuries," or skull fractures. (Dkt. 59-11 at 27-30).

The subsequent medical progress notes dated January 18, 2012, and January 19, 2012, indicate that while Plaintiff was prescribed pain medications for facial pain, he also refused to take his morning medications. (Dkt. 59-10 at 3-4). Plaintiff's January 21, 2012, medical note suggested that he sustained slight bruising to his ears and some swelling and bruising to his eye lids. (*Id.* at 3). Although the whites of Plaintiff's eyes were "bloody," there was no "evidence of trauma or foreign objects." (*Id.*). Plaintiff's rectum also appeared "slightly red," but no excoriation or blood was noted and no "edema or ecchymosis" was observed to his penis or scrotum. (*Id.*). The medical staff observed no bruises to his scalp or his head. (*Id.*).

As demonstrated above, Defendants' medical evidence negates Plaintiff's allegations of an imminent danger of serious physical injury. *See Tafari*, 2017 WL 1406274, at *3 ("Most importantly, [the p]laintiff's allegations of daily constipation, vomiting, blood in his urine, rectal bleeding, and stomach pain, are not borne out by the medical records."); *Jackson*, 2014 WL 1323211, at *2 ("Plaintiff's medical records bely many of his contentions."). In fact, the medical records amply demonstrate that Plaintiff was prescribed pain medication on numerous occasions to quell any discomfort, even when no injuries were observed. *See Rieco v. Gilmore*, No. 2:17-CV-0553, 2018 WL 700266, at *2 (W.D. Pa. Feb. 5, 2018) ("[T]he records reflect that Plaintiff was seen in the medical clinic numerous times . . . for skin abrasions and ulcers related to venous stasis for which

he received medical treatment on numerous occasions."), *appeal dismissed*, No. 18-1542, 2018 WL 4372135 (3d Cir. Aug. 24, 2018); *Towner v. Rao*, No. 12-CV-6633-FPG, 2014 WL 4745920, at *3 (W.D.N.Y. Sept. 23, 2014) ("[T]he record is replete with evidence that DOCCS has treated him with medications for his pain during that time frame (albeit not to his satisfaction)."). Furthermore, the imminent danger exception is not applicable simply because Plaintiff may have complained of pain in several instances and was not prescribed medication on any one given occasion. *See Towner*, 2014 WL 4745920, at *3 ("[I]t is worth noting that courts considering allegations of discomfort or the lack of pain medication have found them to not constitute an imminent danger."); *Cerilli v. Murphy*, No. 3:10-CV-421 SRU, 2010 WL 7865032, at *2 (D. Conn. Aug. 20, 2010) ("Allegation[s] of pain and denial of pain medication have been held not to constitute an imminent danger of serious physical injury."); *Ortiz v. Quarterman*, No. 2:08-CV-0172, 2008 WL 5024857, at *3 (N.D. Tex. Nov. 21, 2008) ("At the time of filing, plaintiff's chief complaint concerning his medical condition was that he had not received any medication for the pain from his head, neck, shoulder, and back injuries. These allegations do not establish plaintiff was in imminent danger of serious physical injury at the time of filing.").

Indeed, Plaintiff's allegations of continued violence, harassment, and physical and emotional trauma do not demonstrate an imminent danger of serious physical injury where the medical records fail to reveal objective findings of serious harm and identify, at most, only superficial injuries that do not suggest the severity necessary to invoke this exception. *See Denby v. Bosco*, No. 6:15CV876, 2017 WL 1963629, at *4 (E.D. Tex. May 11, 2017) (noting that the plaintiff "points to nothing in the medical records confirming the existence"

of his alleged "swelling and infection of the rectum," and the fact that he was "diagnosed with bleeding hemorrhoids" did not place him in imminent danger of serious physical injury), *appeal dismissed*, 719 F. App'x 405 (5th Cir. 2018); *Abreu v. Lira*, 2014 WL 4966911, at *10 (rejecting the plaintiff's contention that he was in imminent danger of serious physical injury where the "plaintiff's medical records in and around December 3, 2012, do not reflect any indication that plaintiff was 'assaulted, beaten, and sexually abused' by correctional officers at Upstate"); *Taylor*, 2010 WL 1963128, at *3 n.1 (noting that even if the court credited the occurrence of the alleged assault, "the injury alleged by Taylor, some swelling on the back and sides of his head, is not sufficient to establish imminent danger under 28 U.S.C. § 1915(g)"). In addition, a number of the medical progress notes reveal that Plaintiff refused medication or treatment following several of the alleged assaults, further indicating that his subjective complaints of pain were inconsistent with the violent conduct alleged in the Second Amended Complaint ("SAC") and his supplemental papers. *See Taylor*, 2010 WL 1963128, at *3 ("The logical inference to be drawn from Taylor's refusal to be examined is that he knew that such an examination would disclose no evidence of an injury.").

The medical observations of "red marks," "abrasions," and "scratches" recorded in some of the progress notes demonstrate the presence of superficial injuries that fall far short of establishing an imminent danger of serious physical injury. *See Bontemps v. Baker*, No. 2:16-CV-2814-MCE-CMK, 2018 WL 4095922, at *2 (E.D. Cal. Aug. 28, 2018) (finding that the force used in applying handcuffs, resulting in "pain in [the plaintiff's] wri[s]ts and marks on his skin" did not create an imminent danger of serious physical injury); *Shove v.*

*McDonald*, No. 14-CV-02903-JD, 2015 WL 5693730, at *3 (N.D. Cal. Sept. 29, 2015) ("Nor do the allegations that the normal handcuffs cut his wrist or cause undue pressure demonstrate possible serious physical injury."); *Porter v. Sauve*, No. 9:12-CV-0138 (MAD/ATB), 2012 WL 12925230, at *3 (N.D.N.Y. Mar. 21, 2012) (finding allegations that the plaintiff "experienced handcuffs that were tight, and/or a pat frisk that was 'hard/rough'" insufficient to create an imminent danger of serious physical injury); *see also Ball v. Famiglio*, 726 F.3d 448, 470 n.30 (3d Cir. 2013) (finding that a single incident where "prison officials used mace to secure [the plaintiff] after she refused to answer direct orders" did not support an assertion of imminent danger of serious physical injury); *Abdul-Akbar*, 239 F.3d at 315 & n.1 (determining that the alleged use of pepper spray, repeated acts of harassment, conspiracies to harm him, and "other forms of retaliation" did not establish that the plaintiff was in imminent danger of serious physical injury). The medical progress notes recorded after the incident allegedly taking place on January 17, 2012, evince some notations suggestive of a possible physical assault. However, assuming that Plaintiff was indeed assaulted on this occasion, the occurrence of just one assault—at least one resulting in the medical observations recorded here—is insufficient to establish an imminent danger of serious physical injury. *See Taylor*, 2010 WL 1963128, at *3 n.1. Stated differently, Plaintiff's "medical records disclose no evidence of an injury consistent with repeated assaults by correctional personnel as alleged" in his SAC and supplemental pleadings. *Id.* at *3; *see generally Liner v. Fischer*, No. 11 Civ. 6711 (PAC), 2014 WL 5438037, at *2 (S.D.N.Y. Oct. 27, 2014) (noting that the jury need not determine the credibility of the defendants' statements in "sworn affidavits and medical records" before

the plaintiff's IFP status can be revoked); *Kidd v. Thaler*, No. 9:11cv18, 2011 WL 6714527, at *8 (E.D. Tex. Aug. 26, 2011) ("It should be noted that the courts have held that a prisoner must allege specific facts showing that he is under imminent danger of serious physical injury; general allegations not grounded in specific facts indicating that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g)."), *report and recommendation adopted*, 2011 WL 6713728 (E.D. Tex. Dec. 21, 2011).

In sum, Defendants' medical evidence demonstrates that reexamination of the Court's preliminary application of the imminent danger exception is warranted, and that Plaintiff has not established his entitlement to this exception. Accordingly, the Court grants Defendants' motion to revoke Plaintiff's IFP status. (Dkt. 59). Plaintiff is required to pay the $400.00 filing fee, with credit for any amounts previously collected from his prison account, within 30 days of the date of this Decision and Order. If Plaintiff fails to pay the full filing fee, his case will be dismissed without prejudice without further order of the Court.

At this time, the Court does not address Plaintiff's continued representation by *pro bono* counsel, other than to note that counsel was assigned because of Plaintiff's IFP status, which is no longer the case. In addition, since Plaintiff failed to participate in the Court-ordered status conference, it would appear that he is not cooperating with his assigned *pro bono* counsel. Accordingly, Plaintiff's counsel may very well be entitled to an order relieving them from this assignment, but the Court will not act in a *sua sponte* fashion in that regard, and instead will address any such request if, in fact, a motion to withdraw is filed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to revoke Plaintiff's IFP status (Dkt. 59) is granted, and Plaintiff's IFP status is hereby revoked. Plaintiff is required to pay the $400.00 filing fee, with credit for any amounts previously collected from his prison account, within 30 days of the date of this Decision and Order. If Plaintiff fails to pay the full filing fee, his case will be dismissed without prejudice without further order of the Court.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: November 25, 2019
Rochester, New York